# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|                                                    |   |                              |
|----------------------------------------------------|---|------------------------------|
| CARLOS MONTEIRO SILVA, a/k/a Carlos DaSilva, a/k/a Carlos Monteiro DaSilva, Petitioner, v. ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility, Defendant. |   | Case No. 20-cv-12255-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                          July 14, 2021

## I. Introduction

Petitioner Carlos Silva ("Silva"), an immigration detainee at Plymouth County House of Correction ("PCCF"), has filed a writ of habeas corpus pursuant to 28 U.S.C § 2241 (the "Petition"), alleging that the duration of his detention is unlawful. D. 1. Respondent Antone Moniz, Superintendent of PCCF ("Respondent"), has moved to dismiss the Petition because Silva failed to set forth grounds entitling him to relief under § 2241. D. 10. For the reasons set forth below, the Court ALLOWS Respondent's motion as to all grounds except the Reid bond hearing, D. 10, and DENIES the Petition as to all grounds except this issue, D. 1.

1

## II. Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

## III. Factual Background

Silva is a native and citizen of Cape Verde. D. 1 ¶ 8. On March 7, 1989, at the age of six, he arrived in the United States as a lawful permanent resident. Id. ¶ 9. On July 1, 2019, he was placed into ICE custody, id. ¶ 8, and was ordered removed by the Immigration Judge ("IJ") on December 11, 2019, id. On May 28, 2020, the Board of Immigration Appeals ("BIA") dismissed Silva's appeal from the IJ's decision. Id. The BIA concluded that the IJ "properly found that the respondent was convicted of an aggravated felony relating to obstruction of justice" and that Silva was "thus removable as charged under the aggravated felony ground of deportability." D. 13-7 at 53. Silva filed a petition for review with the First Circuit. D. 1 ¶ 8; see Silva v. Garland, No. 20-1593 (1st Cir.). On November 4, 2020, the First Circuit granted Silva's motion for stay of removal.

D. 1 ¶ 8. The Panel heard the parties regarding the petition for review on May 5, 2021 and the matter remains pending. Silva v. Garland, No. 20-1593 (1st Cir.).

As of the filing of the Petition, Silva had been detained since he was first taken into ICE custody in July 2019, D. 1 ¶ 10. Silva's last custody review was held on November 5, 2020, at which his petition for release was denied. Id. ¶ 11. Silva also alleges that he is at heightened risk of complications due to the COVID-19 pandemic. Id. ¶ 12. Pending his removal (which is presently stayed by the First Circuit), Silva remains detained at PCCF. Id. ¶ 1.

## IV. Procedural History

Silva filed his first habeas petition with this Court on April 8, 2020. See Campbell v. Moniz, No. 20-cv-10697-PBS, 2020 WL 2129594. In his petition, Silva argued his continued detention without a bond hearing violated due process, relying on Reid v. Donelan, 390 F. Supp. 3d 201 (D. Mass. 2019). Id. The Petition was denied. Id. Silva then filed another habeas petition with this Court on June 16, 2020 on the grounds that his continued confinement posed a substantial risk of serious harm due to his increased risk of contracting COVID-19. D. 11-2 (reproducing Judge Sorokin's September 10, 2020 Memorandum and Order in Silva v. Moniz, 20-cv-11144-LTS (D. Mass.)). The petition was denied. Id. Silva then filed this Petition. D. 1. Respondent now has moved to dismiss. D. 10. The Court heard the parties on the pending motion and took the matter under advisement. D. 18.

## V. Discussion

### A. Due Process under 8 U.S.C. § 1231(a)(6) and *Zadvydas*

Silva argues that under Zadvydas v. Davis, 533 U.S. 678 (2001), six months is the presumptively reasonable period during which ICE may detain individuals to effectuate their removal. D. 1 ¶ 13; Zadvydas, 533 U.S. at 702. Silva argues that the Department of Homeland

Security's administrative regulations state that ICE's Headquarters Post-Order Detention Unit ("HQPDU") also allots a six-month period for determining whether there is a significant likelihood of an individual's removal in the reasonably foreseeable future. D. 1 ¶ 13 (citing 8 C.F.R. § 241.13(b)(2)(ii) (noting that the HQPDU is not obligated to release a non-citizen under this section "until the HQPDU has had the opportunity during a six-month period, dating from the beginning of the removal period . . . to make its determination as to whether there is a significant likelihood of removal in the reasonably foreseeable future")). At the time his Petition was filed, Silva had been held for approximately seven months, since his final removal order was issued on May 28, 2020, id. ¶ 11, and for approximately seventeen and a half months since his detention began on July 1, 2019, id. ¶ 10. The First Circuit granted his stay of any removal in November 2020. Id. ¶ 8.

The detention of non-citizens subject to a final deportation order is governed by 8 U.S.C. § 1231. Pursuant to 8 U.S.C. § 1231, the Attorney General shall remove undocumented individuals who have been ordered removed within ninety days and may detain such individuals during this "removal period." 8 U.S.C. § 1231(a)(1)(2). The removal period begins upon the latest of the following: (i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the noncitizen, the date of the court's final order; (iii) if the noncitizen is detained or confined (except under an immigration process), the date the noncitizen is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). The government may detain non-citizens beyond the ninety-day period upon a finding that the non-citizen is "a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6).

While § 1231(a)(6) does not explicitly limit the period during which the Attorney General may detain a noncitizen, in Zadvydas v. Davis, the Supreme Court held that due process considerations mandate that detention under § 1231(a)(6) be limited "to a period reasonably necessary to bring about that [noncitizen's] removal from the United States." Zadvydas, 533 U.S. at 689. The Court created a six-month presumption and concluded that if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." Id. at 701 (recognizing that the presumption "does not mean that every [non-citizen] not removed must be released after six months," but rather a non-citizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future").

Silva's removal order became final on May 28, 2020, when the BIA issued its final decision. D. 1 ¶ 8. Although Silva has been detained for over six months since his removal order became final, Respondent asserts that once the First Circuit completes its review of Silva's appeal, if decided in Respondent's favor, Silva will be removed to Cape Verde, thereby making his removal "reasonably foreseeable." D. 11 at 10-11. "[P]ost-removal-period detention, unlike detention pending a determination of removability . . . , has no obvious termination point." Zadvydas, 533 U.S. at 697. A petitioner's detention claim under the due process clause is moot, however, where "but for [the] Court's stay of removal, petitioner would have already been removed." Gomes v. Smith, 381 F. Supp. 3d 120, 123 (D. Mass. 2019) (concluding that given petitioner would have already been removed if not for stay, his removal is considered "'imminent' and the implication of reasonable detention under Zadvydas is inapposite"); see Lawrence v. Gonzales, 446 F.3d 221, 227 (1st Cir. 2006) (concluding petitioner's continued detention

5

"occurred pursuant to his own procuring of stays incident to his legal challenges to the removal order; it is beyond dispute that this period of time was necessary to bring about [petitioner's] removal . . ."); McPherson v. Holder, No. 14-cv-30207-MGM, 2015 WL 12861171, at *4 (D. Mass. Mar. 4, 2015) (concluding petitioner's removal was "reasonably foreseeable" where "once [petitioner's] appeal is resolved, if it is resolved in the government's favor, petitioner will be removed," and all that "appears to be preventing the removal process is a decision on petitioner's challenge to his removal order and in particular his motion for stay of removal").

Although a petitioner's detention may lack a specific end date, "this uncertainty alone does not render his detention indefinite in the sense the Supreme Court found constitutionally problematic in Zadvydas." Prieto-Romero v. Clark, 534 F.3d 1053, 1062 (9th Cir. 2008). In Zadvydas, removal was not reasonably foreseeable because no country would accept the deportees or the United States lacked an extradition treaty with the receiving countries, making the deportees' detention "indefinite and potentially permanent." Zadvydas, 533 U.S. at 696. Here, ICE determined in its custody reviews that continued detention was permitted due to Silva's "final order of removal, his criminal history which includes a conviction for accessory after the fact—murder, his approximately 9-year period in which he was a fugitive from justice, and due to ICE's belief that if his petition for review is dismissed, his removal to Cape Verde will be effectuated." D. 11-1 at 7 ¶ 35. Silva's ongoing stay of removal, standing alone, is inadequate to show that there is not a significant likelihood of removal in the reasonably foreseeable future. See, e.g., Prieto-Romero, 534 F.3d at 1065 (concluding petitioner's continued detention "while lengthy, is not indefinite" where he "foreseeably remains capable of being removed—even if it has not yet finally been determined that he should be removed—and so the government retains an interest in 'assuring [his] presence at removal'" (emphasis omitted) (quoting Zadvydas, 533 U.S. at 699)); Lawrence,

6

446 F.3d at 227 (concluding petitioner's prolonged post-removal detention "was necessary to bring about [his] removal" when it "occurred pursuant to his own procuring of stays incident to his legal challenges"); Soberanes v. Comfort, 388 F.3d 1305, 1311 (10th Cir. 2004) (concluding petitioner's detention was not indefinite because it was "directly associated with a judicial review process that has a definite and evidently impending termination point"); Marks v. Clark, No. C06-0717 RSL, 2007 WL 2138753, at *5 (W.D. Wash. July 23, 2007) (noting that petitioner had failed to show his removal was not significantly likely in the reasonable future where "the only thing preventing petitioner's removal is his Petition for Review and related stay of removal"). Accordingly, the Petition fails on this ground.

### B. DHS Post-order Custody Regulations

Silva argues that ICE violated 8 C.F.R. § 241.13 by not permitting Silva an opportunity to respond to the evidence relied upon by ICE when rendering a decision regarding detention. D. 1 ¶ 17. Silva asserts that ICE also failed to assess whether Silva should remain detained in a neutral and impartial manner and thereby violated Silva's due process rights pursuant to the Fifth Amendment. Id. ¶ 18. The "special review procedures" in section 241.13 apply to non-citizens detained under the custody review procedures in section 241.4, after the removal period has expired, "where the [non-citizen] has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). Accordingly, the procedure Silva refers to—which requires ICE "permit the [non-citizen] an opportunity to respond to the evidence on which the Service intends to rely," 8 C.F.R. § 241.13(e)(4)—is inapplicable, where, as here, the petitioner has failed to provide good reason to believe there is no significant likelihood of removal, see, e.g., Rombot v. Souza, 296 F. Supp. 3d 383, 387 (D. Mass. 2017) (concluding that where petitioner did

7

not provide ICE with "'good reason to believe' his deportation would not occur in the 'reasonably foreseeable future'" and ICE did not make the "requisite finding of that fact," 8 C.F.R. § 241.13 was inapposite).

Turning to Silva's general allegation that ICE was not impartial or neutral when assessing Silva's continued detention, D. 1 ¶ 18, pursuant to 8 C.F.R. § 241.4, ICE may consider a detainee's "criminal conduct and criminal convictions," 8 C.F.R. § 241.4(f)(2), as well as "[t]he likelihood that the [non-citizen] is a significant flight risk or may abscond to avoid removal," 8 C.F.R. § 241.4(f)(7), when assessing whether to recommend further detention or release of a non-citizen. Here, ICE reviewed Silva's custody status on December 14, 2020, D. 1-2 at 2, and explained in its decision that Silva had "an extensive criminal history," id. Silva's criminal history includes several convictions, including a conviction for "knowingly receiving stolen property in June 2003" and "breaking and entering in the nighttime with intent to commit a felony" in December 2004. D. 13-6 at 11-12. On September 25, 2017, Silva pled guilty to accessory after the fact to murder, stemming from events that occurred in 2003, and was sentenced to four to five years' imprisonment. Id. at 12; see D. 13-7 at 53. ICE's decision concluded that Silva would "remain in custody until ICE can effectuate [his] removal," and noted that Silva was not precluded from bringing forth evidence in the future to "demonstrate a good reason why [his] removal is unlikely." Id. The explanation provided complies with the regulations and provides no evidence of lack of impartiality. See Doe v. Smith, No. 18-cv-11363-FDS, 2018 WL 4696748, at *10 (D. Mass. Oct. 1, 2018) (denying petitioner's claim that she was entitled to a neutral decision-maker where she "made no allegation of unfair bias on the part of the IJ or the BIA" and provided no authority for the "proposition that ICE must provide decision-makers independent of the immigration system to review detention proceedings").

Lastly, Silva argues that pursuant to section 241.4(e)(1), "the regulations were not followed because section 241.4(e)(1) states that when removal is not immediate, release is required." D. 1 at ¶ 17. The section solely requires, however, that "[b]efore making any recommendation or decision to release a detainee, a majority of the Review Panel members, or the Director of the HQPDU in the case of a record review, must conclude that . . . [t]ravel documents for the [non-citizens] are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest." 8 C.F.R. § 241.4(e)(1). The section does not in itself require release, but rather, delineates the requirements that must be met to do so. Id. Accordingly, the Court concludes that this section is also inapplicable. Silva's due process claim pursuant to DHS post-order custody regulations also fails.

### C. Fifth Amendment claim

Silva alleges that he is at high-risk of contracting COVID-19 due to preexisting conditions, D. 1 ¶ 19, and suffers from a pre-existing serious medical condition that he alleges ICE has refused to treat, id. ¶ 21. He asserts that his continued detention despite such conditions violates his Fifth Amendment rights. Id. ¶ 22. The First Circuit assesses claims under the Fifth Amendment similarly to claims under the Eight Amendment, "with both leaving 'ample room for professional judgment, constraints presented by the institutional setting, and the need to give latitude to administrators who have to make difficult trade-offs as to risks and resources.'" Baez v. Moniz, 460 F. Supp. 3d 78, 88 (D. Mass. 2020) (quoting Battista v. Clarke, 645 F.3d 449, 453 (1st Cir. 2011)); see Couchon v. Cousins, No. 17-cv-10965-RGS, 2018 WL 4189694, at *6 (D. Mass. Aug. 31, 2018) (concluding First Circuit precedent did not permit the Court to apply standard other than "deliberate indifference" to Fifth Amendment claim involving challenge to conditions of confinement). Fifth Amendment analysis requires that Silva "establish that [ICE] has acted 'with

deliberate indifference to a substantial risk of serious harm to health.'" Baez, 460 F. Supp. 3d at 88 (quoting Coscia v. Town of Pembroke, 659 F.3d 37, 39 (1st Cir. 2011)). Silva must also "provide evidence that the [respondent] had actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented that harm." Id. (quotation marks omitted) (quoting Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018)).

Here, Silva does not specify what conditions he has that put him at increased risk of COVID-19. See D. 1 ¶¶ 19-23. Assuming, however, that Silva has a condition included in the CDC's list of pre-conditions for heightened risk of grave illness from COVID-19, Silva still fails to assert that ICE had any knowledge of Silva's alleged condition or any risk specific to Silva, beyond the danger presented by COVID-19 generally. Id. The requisite mental state for a deliberate indifference claim is "characterized by obduracy and wantonness, not inadvertence or error in good faith," and "has been likened to . . . criminal recklessness." Baez, 460 F. Supp. 3d at 88 (internal quotation marks omitted) (quoting Leite v. Bergeron, 911 F.3d 47, 52-53 (1st Cir. 2018)). Although the Court recognizes Silva's assertion of the spread of the virus at PCCF, id. ¶ 12, the spread of the virus alone does not amount to a wanton disregard of Silva's health or amount to a deliberate indifference claim, particularly now where the "there has been substantial improvement in the treatment of the disease," including the availability of vaccines. See United States v. Colburn, No. 19-cr-10080-NMG, 2021 WL 257133, at *2-3 (D. Mass. Jan. 26, 2021) (recognizing that the Bureau of Prisons "has become much more proficient in controlling [COVID-19's] spread and vaccines will soon alleviate remaining concern").

### D. *Reid* Bond Hearing

Silva argues in the alternative that pursuant to the Fifth Amendment, he is required an opportunity "to have his detention reviewed through a bond hearing in light of his prolonged and

10

unconstitutional, detention." D. 1 ¶ 24. Where, as here, a petitioner files a petition for review and receives a stay of removal pending appeal, the petitioner's removal proceedings are considered "ongoing" and the petitioner is a member of the Reid class, pursuant to 8 U.S.C. § 1226. Celimen Savino v. Souza, No. 20-cv-10259-PBS, 2020 WL 1808625, at *4 (D. Mass. Apr. 9, 2020) (agreeing "with the majority of the circuit courts and the Reid court that Section 1226 'continues to govern detention' where 'a removal order has been stayed' pending judicial review" (quoting Reid, 64 F. Supp. 3d at 276-77)).

Pursuant to Reid, "mandatory detention under § 1226(c) without a bond hearing violates the Due Process Clause when it becomes unreasonably prolonged in relation to its purpose in ensuring the removal of deportable criminal" individuals. Reid, 390 F. Supp. 3d at 215. The reasonableness of a petitioner's continued detention without a bond hearing under § 1226(c) must be analyzed on a case-by-case basis. Id. at 219. Nonexclusive factors are relevant in determining the reasonableness of continued mandatory detention, including "the total length of the detention; the foreseeability of proceedings concluding in the near future (or the likely duration of future detention); the period of the detention compared to the criminal sentence; the promptness (or delay) of the immigration authorities or the detainee; and the likelihood that the proceedings will culminate in a final removal order." Id. (citation omitted). Of these factors, the length of the petitioner's detention is "the most important." Id. "Mandatory detention is 'likely to be unreasonable if it lasts for more than one year during removal proceedings before the agency, excluding any delays due to the [non-citizen's] dilatory tactics.'" Decarvalho v. Souza, No. 20-cv-11036-PBS, 2020 WL 3498270, at *1 (D. Mass. June 29, 2020) (citing Reid, 390 F. Supp. 3d at 219). "Detention of less than one year may be unreasonable 'if the [g]overnment unreasonably delays or the case languishes on a docket.'" Id. (quoting Reid, 390 F. Supp. 3d at 220). If the

11

Court concludes that a petitioner's mandatory detention has been unreasonably prolonged, "the petitioner 'is entitled to a bond hearing before an immigration judge.'" Id. at *2.

Although the parties had briefed the issue regarding a Reid bond hearing previously, given this Court's decision today and the continuing pendency of Silva's petition for review before the First Circuit, the Court invites the parties to supplement their briefing as to this issue. Accordingly, the Court reserves on the Reid bond hearing, but invites Silva to supplement his briefing on this issue, in a memorandum not to exceed ten pages, by July 28, 2021. Respondent may then respond in a memorandum not to exceed ten pages by August 11, 2021.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Respondent's motion to dismiss as to all grounds except as to the Reid bond hearing, D. 10, and DENIES the Petition except as to the Reid bond hearing, D. 1.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge